UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| In the matter of<br><br>THE MIDDLESEX CORPORATION,<br>Plaintiff,<br><br>For Exoneration from or Limitation of Liability. | )<br>)<br>)<br>)<br>)<br>)<br>)    Civ. Action No. 14-40145-TSH<br>)<br>)<br>)<br>) |

## MEMORANDUM OF DECISION
### September 21, 2015

**HILLMAN, D.J.**

### Background

The Plaintiff, The Middlesex Corporation ("Middlesex"), petitions the Court for exoneration from or limitation of liability pursuant to the Limitation of Shipowners' Liability Act, 46 U.S.C. §§ 30501, *et seq.* ("Act"), and Supplemental Rule F of the Federal Rules of Civil Procedure. *See Amended Complaint* (Docket No. 7)("Complaint"). Middlesex is the owner of a barge configuration ("Barge"), which on August 19-20, 2014, was docked at the Middlesex trestle on Lake Quinsigamond in Worcester, Massachusetts. The Barge was manufactured by Poseidon Barge Corp. ("Poseidon"). In the early morning hours of August 20, 2014, the Barge was struck by an 18' Bayliner motor boat ("Bayliner"), which was owned and operated by Gregory Polito. This Order addresses Middlesex's *Ex Parte* Motion For Issuance of Injunction (Docket No. 2), requesting that this Court: (1) approve the security deposited by it dated October 3, 2014 and executed by Travelers Casualty and Surety Company of America, in the amount of $159,702, plus 6% interest per annum, (2) direct the issuance of notice, and (3) pursuant to

F.R.Civ.P. Supplemental Rule F(3), enjoin all lawsuits, causes of action, and claims against Middlesex and its property arising from the accident, except in this civil action.   For the reasons set forth below, that motion is *allowed*.

### Facts[1]

#### *The Accident*

In 2009, the Massachusetts Department of Transportation contracted with Middlesex to design and construct a replacement for the Kenneth F. Burns Memorial Bridge over Route 9, connecting Shrewsbury and Worcester, Massachusetts.  In performing that contract, Middlesex used various barge sections and motorized workboats it owns to transport personnel and equipment on Lake Quinsigamond. Individual barge sections were used interchangeably to configure larger barges of various dimensions, according to Middlesex's needs.

On August 19 and 20, 2014, Middlesex owned and controlled the Barge, which consisted of four interlocked Poseidon barge sections.  The Barge measured 30 feet wide on its north and south sides by 40 feet long on its east and west sides (30' x 40'). The Barge consisted of two 10 foot by 20 foot (10' x 20') Poseidon barge sections in between two 10 foot by 40 foot (10' x 40') Poseidon barge sections. The Barge was docked on Lake Quinsigamond at the Middlesex trestle adjacent to 231 Lake Avenue, Worcester in a safe condition and in compliance with all applicable statutes and regulations.

Gregory Polito ("Gregory"), Diane Polito ("Diane," and, together with Gregory, the "Politos"), Erica Lavallee ("Lavallee"), and John Mazzone ("Mazzone") met for drinks at a local

---

[1] As I must, tor purposes of this Memorandum of Decision, the Court has accepted the facts as set forth in the Complaint.  The Politos, as owners and, in Gregory's case, operator, of the Bayliner subsequently filed a petition seeking exoneration from or limitation of liability pursuant to the Act in which they assert that Middlesex's negligence was solely responsible for the accident.  *See* Civ.Act.No. 15-10462-TSH.  The Politos have also filed a motion for an injunction, which among other relief, seeks approval of their security and enjoinment of all lawsuits, etc., against them arising from the accident. For purposes of their motion, I have accepted their factual assertions as true.

sports bar on the evening of August 19, 2014. After they left the bar, they went to the Politos' home on Lake Quinsigamond's Moonlight Bay where they consumed more drinks. The Politos, Lavallee, and Mazzone then went for a nighttime ride in the Bayliner on Lake Quinsigamond, departing from the Politos' home. The Bayliner headed north on Lake Quinsigamond passing the Middlesex trestle to port where the Barge was docked with two cranes, floodlights, and other lights clearly visible. The Bayliner and its four occupants stopped at the Donahue Rowing Center in Shrewsbury where they consumed more drinks. After leaving the Donahue Rowing Center, the Bayliner and its four occupants stopped at the Marine Corps League marina and bar in Worcester, before once again resuming their nighttime ride.

      Shortly before 1:07 am on August 20, 2014, Gregory was operating the Bayliner in a southerly direction when it allided with the Barge, destroying the Bayliner and causing serious personal injuries to one or more of its occupants. The Barge was neither underway nor operating at the time of the allision and was docked at Middlesex's trestle, outboard of and secured to other barge sections which were in turn docked and secured to the trestle. The Barge did not project into any channel or otherwise impede safe passage of any vessel to the east. Law enforcement personnel responding to the accident scene recovered a largely empty half-gallon bottle of whiskey and an open beer can with beer inside it from the Bayliner. Gregory refused a breathalyzer test after the accident. The Massachusetts Environmental Police obtained a search warrant for Gregory's UMass Memorial Medical Center records after the accident.

      Middlesex asks that the Court find that the allision of the Bayliner and the Barge and any and all injuries, damages, and losses claimed to have resulted from it were not caused or contributed to by any breach of applicable statutes or regulations, or any type of unseaworthiness, fault, neglect, or lack of reasonable care by or on the part of the Barge or

Middlesex. Alternatively, they seek a declaration that any breach of applicable statutes or regulations, or any type of unseaworthiness, fault, neglect, or lack of reasonable care by or on the part of the Barge or Middlesex that might have contributed to any and all alleged injuries, damages, and losses were occasioned and incurred without the privity or knowledge of Middlesex and/or were occasioned and incurred due to the fault of third-parties for which Middlesex is not responsible.

*Procedural Facts*

Mazzone, through his attorneys, gave initial written notice of his claim against Middlesex in a letter dated September 3, 2014. *See Brief in Sup. Of Ex Parte Mot. For Issuance of Injunction* (Docket No. 3), at *Ex.* 1. Additional parties have subsequently submitted written notice of related claims. Pursuant to Fed R. Civ.P. Supplemental Rule F(1), Middlesex filed its Complaint within six months of Middlesex's receipt of Mazzone's initial written notice on September 3, 2014. Middlesex does not know the total amount of the claims that may be made for injuries, damages, and losses as a result of the allision. Middlesex expects that formal claims based on those injuries, damages, and losses will be presented in due course and that the total claims will exceed the limitation fund. Middlesex also alleges that the post casualty value of the Barge does not exceed $159,202.00.

**Discussion**

Middlesex has filed an *ex parte* motion for injunctive relief. By its Complaint, Middlesex seeks exoneration from liability for any and all injuries, damages, and losses of any kind arising from the early morning allision occurring on or about August 20, 2014, including damage to the Politos' Bayliner, personal injuries allegedly sustained by persons aboard it, damage to the environment, as well as any other damages or claimed losses incurred by others which have been

and/or may hereafter be asserted. In the alternative, Middlesex seeks limitation of its liability pursuant to the Act, and the Supplemental Admiralty and Maritime Claims Rule F, 28 U.S.C., Fed.R. Civ. P. Supplemental Rule F ("Supplemental Rule F").  Accordingly, Middlesex requests that the Court issue an Order ceasing and enjoining all lawsuits, causes of action, and claims against it and its property arising from the allision, except in this action. Potential claimants appeared at the hearing and objected to the issuance of the injunction on the grounds that this Court lacks jurisdiction over Middlesex's Complaint—they reported to the Court that they intended to file a brief with the Court on that issue.  A few months have passed and no such brief has been filed.  The matter is therefore ripe for ruling.

The Act provides that a vessel owner may limit its liability for losses and/or damages incurred to the value of the vessel and its then pending freight, so long as the loss or damage is incurred without the "privity or knowledge of the owner." 46 U.S.C.A. § 30505.  "A shipowner facing potential liability can file a complaint for limitation of liability in a federal district court which then is authorized to stay all other proceedings against the shipowner and receive all claims." *Complaint of Consolidation Coal Co.*, 123 F.3d 126, 132 (3$^d$ Cir. 1997)(citing 46 App. U.S.C. § 185; Fed.R.Civ.P. Supp. Rule F(4)).  More specifically, the Act permits "[t]he owner of a vessel to bring a civil action in a district court of the United States for limitation of liability [thereunder]. The action must be brought within 6 months after a claimant gives the owner written notice of a claim." 46 U.S.C. § 30511(a). At the time that the action is brought, the vessel owner must "deposit with the court, for the benefit of claimants [:] (A) an amount equal to the value of the owner's interest in the vessel and pending freight, or approved security; and (B) an amount, or approved security, that the court may fix from time to time as necessary to carry out this chapter [46 U.S.C. § 30501 *et seq.*]." *Id.* § 30511(b).  Finally, the Act provides that, "[w]hen

an action has been brought under this section and the owner has complied with subsection (b), all claims and proceedings against the owner related to the matter in question shall cease." *Id.* § 30511(c).

Supplemental Rule F provides that,

> [n]ot later than six months after receipt of a claim in writing, any vessel owner may file a complaint in the appropriate district court ... for limitation of liability pursuant to statute. The owner (a) shall deposit with the court, for the benefit of claimants, a sum equal to the amount or value of the owner's interest in the vessel and pending freight, or approved security therefor, and in addition such sums, or approved security therefor, as the court may from time to time fix as necessary to carry out the provisions of the statutes as amended; or (b) at the owner's option shall transfer to a trustee to be appointed by the court, for the benefit of claimants, the owner's interest in the vessel and pending freight, together with such sums, or approved security therefor, as the court may from time to time fix as necessary to carry out the provisions of the statutes as amended.

Fed.R.Civ.P. Supp. Rule F.

Unlike § 30511, Supplemental Rule F also requires a plaintiff in an action for limitation of liability to "give security for costs and, if the plaintiff elects to give security, for interest at the rate of 6 percent per annum from the date of the security." Supplemental Rule F(1). Additionally, Supplemental Rule F provides that, once the vessel owner has made the requisite deposits, "all claims and proceedings against the owner or the owner's property with respect to the matter in question shall cease." *Id.,* F(3). It further states that, "[o]n application of the plaintiff the court shall enjoin the further prosecution of any action or proceeding against the plaintiff or the plaintiff's property with respect to any claim subject to limitation in the action." *Id.*. Finally, Supplemental Rule F provides that, once the owner has made the deposits described above:

> the court shall issue a notice to all persons asserting claims with respect to which the complaint seeks limitation, admonishing them to file their respective claims with the clerk of the court and to serve on the attorneys for the plaintiff a copy thereof on or before a date to be named in the notice. The date so fixed shall not be less than 30 days after issuance of the notice. For cause shown, the court may enlarge the time within which claims may be filed. The notice shall be published in such newspaper or newspapers as the court may direct once a week for four

successive weeks prior to the date fixed for the filing of claims. The plaintiff not later than the day of second publication shall also mail a copy of the notice to every person known to have made any claim against the vessel or the plaintiff arising out of the voyage or trip on which the claims sought to be limited arose. In cases involving death a copy of such notice shall be mailed to the decedent at the decedents last known address, and also to any person who shall be known to have made any claim on account of such death.

*Id.*, F(4). A "claimant may by motion demand that the funds deposited in court or the security given by the plaintiff be increased"—either "on the ground that they are less than the value of the plaintiff's interest in the vessel and pending freight" or "on the ground that it is insufficient to carry out the provisions of the statutes relating to claims in respect of loss of life or bodily injury." *Id.*, F(7).

In summary, pursuant to the Act and Supplemental Rule F: "The district court secures the value of the vessel or owner's interest, marshals claims, and enjoins the prosecution of other actions with respect to the claims. In these proceedings, the court, sitting without a jury, adjudicates the claims. The court determines whether the vessel owner is liable and whether the owner may limit liability. The court then determines the validity of the claims, and if liability is limited, distributes the limited fund among the claimants. *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 448 (2001).

In the first instance, the Court finds that Middlesex has complied with its obligations under the Act and Supplemental Rule F in that it has provided security and has given security for costs[2]. Furthermore, on the face of the Complaint, Middlesex has asserted facts regarding a lack

---

[2] Middlesex has filed an appraisal prepared by a professional marine surveyor which sets the fair market value of the Barge at 159,202.00. *See* Declaration *of Thomas R. Hill*, attached to proposed *Order Approving Security Directing Issuance of Notice and Enjoining Further Prosecution* (Docket No. 2)("*Proposed Order*"). Middlesex has also provided $500 for costs and 6% interest per annum as required by Supplemental Rule F. Furthermore, the Stipulation Re Security For Value Of Plaintiff's Interest filed by Middlesex and Travelers Casualty and Surety Company of America, *see* attachment to *Proposed Order*, is all that is required for security. *See In the Matter of the Complaint of Glenn Fagerlin*, 2009 WL 393772, No. C 08-5225-SI (N.D.Cal. Feb. 13, 2009).

of privity, knowledge and absence of fault sufficient to make an absence of liability possible. Therefore, there motion for an injunction is granted.[3]

## Conclusion

The Middlesex Corporation's *Ex Parte* Motion For Issuance of Injunction (Docket No. 2) is **_allowed_**.  A separate Order shall issue.

/s/  *Timothy S. Hillman*
TIMOTHY S. HILLMAN
DISTRICT JUDGE

---

[3] At the hearing, counsel for proposed claimants indicated that they intend to argue that there were up to 16 barges interlocked together to form one vessel and therefore, the value of the "vessel" is much higher than that proposed by Middlesex. First, because this is a tort action, the owner is required to surrender the "offending vessel" to the limitation fund, rather the entire "flotilla" as required in employer/employee or contract relationships. *See North East Marine, Inc. v. Boody*, No. 09-CV-5600 (CBA), 2012 WL 442794 (E.D.N.Y. 2012). Therefore, the amount tendered by Middlesex is adequate. Additionally, a claimant is free to challenge the amount of the limitation on liability, but, the preferred practice is to address that question later in the case, for example, after liability has been determined.